UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLACK LIVES MATTER, JERLYNE CALIXTE individually and as a member of BLACK LIVES MATTER, VANESSA GREEN individually and as a member of BLACK LIVES MATTER, DOMINIQUE MCGREGOR individually and as a member of BLACK LIVES MATTER, DR. WELDON MCWILLIAMS IV individually and as a member of BLACK LIVES MATTER, EVERETT NEWTON individually and as a member of BLACK LIVES MATTER

                Plaintiffs,

vs.

THE TOWN OF CLARKSTOWN, MICHAEL SULLIVAN individually and in his official capacity as CHIEF OF POLICE of THE TOWN OF CLARKSTOWN, STEPHEN COLE-HATCHARD individually and in his official capacity as a TOWN OF CLARKSTOWN POLICE SERGEANT and DIRECTOR OF THE STRATEGIC INTELLIGENCE UNIT, JOHN AND JANE DOE individually and in their official capacity as MEMBERS OF THE STRATEGIC INTELLIGENCE UNIT for THE TOWN OF CLARKSTOWN POLICE,

                Defendants.

---

Civil Action No.

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

**JURY TRIAL DEMANDED**

By and through their attorney William O. Wagstaff III, Plaintiffs allege upon knowledge, information and/or belief as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which the Plaintiffs BLACK LIVES MATTER are seeking relief for the violation by Defendants of their rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution. Defendants illegally targeted members of Black Lives Matter for surveillance based upon their race and critical commentary of the treatment of people of color by police. This suit is being initiated under 42 U.S.C § 1983, which is the federal mechanism that allows constitutional tortfeasors acting under color of law to be sued in Federal Court.

2. These illegal actions are borne out of the unwarranted anxiety that the Black Lives Matter Movement causes mainstream society. When groups of African Americans convene in peaceful protest of the treatment they receive from law enforcement, unfortunately, like here, their rights are often violated. Perhaps the mantra Black Lives Matter Too would be more palatable, but the necessity to deliver the message in a way that is non-threatening speaks to the underlying issue. The disproportionate treatment of men, women, and children of color, at the hands of police, raises questions about how America values their lives. This harsh reality tends to overwhelm, degrade and leave people of color to question the worth of their flesh, bones, and souls. The Plaintiffs refused to retreat into the shadows and decided to form a chapter of Black Lives Matter. This courage had a consequence, it made them a target for the violation of their inalienable rights.

The Clarkstown Police Department attended peaceful Black Lives Matter rallies intimidating the Plaintiffs by positioning snipers on rooftops. Black Lives Matter members were targeted by the Clarkstown Police Department Strategic Intelligence Unit (SIU) without reasonable suspicion that they individually, or as a group were planning or actually engaged in any criminal activity. Each member was illegally surveilled when the SIU established electronic "Geofences" and placed "Black Lives Matter Movement" under the same surveillance criteria as "Terrorism", "Gangs", "Violence", "Heroin Initiative", and "Police Riots".

The illegality of the Clarkstown Police Department's actions was so alarming that Town Supervisor George Hoehmann sent a letter to Assistant United States Attorney Benjamin R. Allee seeking investigation into the racial profiling by the Clarkstown Police Department. See Letter from Supervisor Hoehmann, annexed hereto as **Exhibit A**.

3. Black Lives Matter bring this lawsuit in order to affirm the principle that individuals may not be singled out for intrusive investigation and pervasive surveillance that disrupt the Constitutional Right to be free from harassment, even if you are African American. Accordingly, Black Lives Matter seeks an injunction prohibiting Defendants and any government employees under their control now or in the future from engaging in illegal surveillance, also requiring the SIU to be disbanded unless it adopts the Handschu Guidelines, compensatory and punitive damages.

**JURISDICTION AND VENUE**

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs allege violations of the United States Constitution and 28 U.S.C. § 1343 because relief is sought for the deprivation of Plaintiffs' constitutional rights under color of State Law.

5. Venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred within the district.

## PARTIES

### Plaintiffs

6. **Black Lives Matter – Rockland County** is an African American grassroots organization made up of individuals who believe that the killing of unarmed people of color by law enforcement must stop. Their call for justice is not a cry for preferential treatment over other races or ethnicities, but for racial equity.

7. **Jerlyne Calixte** works as a healing counselor and research assistant. Ms. Calixte lives in Spring Valley, New York.

8. **Vanessa Green** is a senior supervisor for a domestic violence program. Ms. Green lives in Woodbury, New York.

9. **Dominique McGregor** is a 6th grade teacher at an elementary school in the Bronx, New York. She lives in Spring Valley, New York with her father.

10. **Dr. Weldon McWilliams IV** is the pastor of First Baptist Church in Spring Valley, New York. In addition, he is an Assistant Professor of History at a local community college. He is the father of (5) five children and lives in Pomona, New York.

11. **Everett Newton** is a pastor and the proud father to his daughter. He resides in Clarkstown, New York.

### Defendants

12. **The Town of Clarkstown (Town)** is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The Town has

3

established and maintains a police department. The Town is responsible for the illegal actions of its police department, police officials, the rank and file as well as units like the Strategic Intelligence Unit that it creates unilaterally or through inter-municipal agreement.

13. **Michael Sullivan**, at all times relevant to the facts of the Complaint, was the Chief of Police for the Town acting under color of law. As such, he was the policy maker for the police department and liability for his illegal conduct flows to the Town. The conduct Mr. Sullivan engaged in was malicious and intentional; accordingly, he is also being sued individually.

14. **Stephen Cole-Hatchard**, at all times relevant to the facts of the Complaint, was a police sergeant and Director of the Strategic Intelligence Unit acting under color of law. As SIU Director, Sgt. Cole Hatchard reported directly to, timely apprised and obtained approval from Chief Sullivan for all electronic surveillance and related investigative activities of the SIU. The Town is legally responsible for his actions because a policy maker approved them. The conduct Sgt. Cole-Hatchard engaged in was malicious and intentional; accordingly, he is also being sued individually.

15. **John and Jane Does** are and/or were, at all times relevant herein members of the Strategic Intelligence Unit, whose names are not presently known to Plaintiffs. At all times relevant to the facts of the Complaint, said Defendants were acting under color of law under the direction of Chief Sullivan. Any party contributing to the illegal surveillance and racial profiling of African Americans is engaged in malicious and intentional conduct; accordingly, he/she are also being sued individually.

## STATEMENT OF FACTS

### Creation of Strategic Intelligence Unit Under Applicable Federal Law

16. Pursuant to the Omnibus Crime Act, the Town created within the Police Department the Strategic Intelligence Unit ("SIU). On or about April 17, 2013, the County of Rockland and the Town entered into an inter-municipal agreement to form an entity known as the Rockland County Intelligence Led Policing and Prosecution Center ("ILPPC or "SIU") to monitor, collect and share data regarding criminal activity as authorized by the Omnibus Crime Act, 28 CFR Part 23 *et. seq.* and the Constitutions of the United States and State of New York.

17. 28 CFR Part 23.20 prohibits the surveillance and collection of electronic data concerning the political, religious or social views of any individual, group or association unless there is a reasonable suspicion that such individual, group or association is involved in criminal conduct and the information is relevant to that criminal conduct, stating in pertinent part:

> **(a)** A project shall collect and maintain criminal intelligence information concerning an individual *only if there is reasonable suspicion* that the individual is involved in criminal conduct or activity and information is relevant to that criminal conduct or activity.
>
> **(b)** A project *shall not collect* or maintain criminal intelligence information about the political, religious or social views, associates, or activities of any individual or any group, association, corporation, business, partnership, or other organization unless such information *directly relates to criminal conduct or activity and there is reasonable suspicion that the subject of information is or may be involved in criminal or activity.*

**(Emphasis Added)**

5

18. As Clarkstown's Chief of Police, the governance and control of this police department and its members is vested in Defendant Chief of Police Michael Sullivan. As such, Michael Sullivan was the policy maker for the Town police department. See Defendant Sullivan's Complaint pg. 6 ¶ 28, annexed hereto as **Exhibit B**. Admitted by Defendant Town See Town's Answer pg. 4 ¶ 28, annexed hereto as **Exhibit C**.

19. At all relevant times before his suspension on July 20, 2016, as Chief of Police Defendant Sullivan was responsible to insure the SIU's compliance with all applicable laws, including the aforesaid provisions of the Omnibus Crime Act and related regulations.

20. At all relevant times before his suspension as Chief of Police, Sullivan appointed Defendant Cole-Hatchard as Director of the SIU.

21. As SIU Director, Sgt. Cole-Hatchard reported directly to, timely apprised and obtained approval of Chief Sullivan for all the electronic surveillance and related investigative activities of the SIU.

22. This case is rather unique in that the Defendant Town of Clarkstown has already admitted that the illegal actions alleged herein have happened. Their admissions are contained in their Amended Answer to Co-Defendant Chief of Police Michael Sullivan's lawsuit (Case No.: 7:16- cv-06714) initiated against the Town of Clarkstown seeking damages and reinstatement to his position as Chief of Police. See **Exhibit C**

23. Chief Sullivan's suspension is as a result of him being the policy maker for the Town of Clarkstown Police and condoning a custom and practice of illegal surveillance.

24. From at least January 2015, with knowledge and consent of Defendant Chief Sullivan, Defendant Sgt. Cole-Hatchard, and Defendant John and Jane Doe

Members of the SIU have engaged in the unlawful surveillance of African Americans groups, the Rockland County Sheriff, a Clarkstown Town Judge and citizens of the County of Rockland, solely based upon these individuals' race, social and/or political positions in violation of 28 CFR Part 23 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

**Racial Profiling and Illegal Surveillance of Members of Black Lives Matter**

25. Commencing at least as early as January 1, 2015, the SIU issued monthly reports in conjunction with and to the Rockland County District Attorney's Office.

26. The SIU describes the purpose of the Report as follows:

> Through the use of social media monitoring platform and other Investigatory tactics, the ILPPC is able to search, monitor and analyze real time social media content from any chosen location around the country. With the aim to interrupt violence, the ILPPC's mission is to:
>
> Prevent individuals from causing harm to themselves and others; Set up geofences to monitor social media in high-risk areas of Rockland; and
>
> Monitor social media accounts of individuals who may be associated with acts of violence. Findings will all be supported by both tactical and strategic intelligence, with assistance from constant communication with the Youth Bureau and Community Advocates (Interrupters).

27. Among other things, the Reports reflect the number of electronic investigations established, the groups targeted for electronic surveillance via electronic "Geofences" and the number of alerts received and reviewed.

28. The November 2015 Report, dated December 11, 2015, indicates that the "Black Lives Matter Movement" was one of the groups subject of electronic surveillance, along with such categories as "Gangs," "Violence," "Terrorism," "Heroine Initiative," and "Police Riots." See November SNUG Report, annexed hereto as **Exhibit D**

29. The November 2015 Report reflects SIU conducted electronic surveillance on two (2) Black Lives Matter Movement members. No misconduct or threat of criminal conduct was found with respect to these two individuals, nor does the Report reflect any justifiable basis to conduct such surveillance as mandated by 28 CFR Part 23.20 (a) and (b).

30. Upon information and belief, at the direction of Chief Sullivan and Sgt. Cole-Hatchard, the SIU was conducting unlawful surveillance of Black Lives Matter Members well before November 2015.

31. The December 2015 Report, dated January 4, 2016, repeats the surveillance methodology referenced in the November Report. The December Report reflects that the SIU conducted electronic surveillance on what it deemed to be six (6) members of the Black Lives Matter Movement. Again, no misconduct was found, nor was there any legitimate legal basis in the Report for surveillance under 28 CFR Part 23.20 (a) and (b). See December SNUG Report, annexed hereto as **Exhibit E**

32. By email dated January 14, 2016, Sgt. Cole-Hatchard forwarded the December Report to various individuals within both the Clarkstown Police Department including Sullivan, as well as the Rockland County District Attorney's Office.

33. Within 45 minutes of receipt of the December Report, the Rockland County District Attorney's Office responded to Sgt. Cole-Hatchard's transmittal of the December Report, noting in pertinent part the obvious illegality of the surveillance of Black Lives Matter members: "I mentioned before, you really should not have Black Lives Matter listed as a target for surveillance." **(Emphasis Added)** See Email from Detective Peter Modafferi, annexed hereto as **Exhibit F**

34. The racial profiling of the members of "Black Lives Matter" violated 28 CFR Part 23 (a) and (b) as well as the First and Fourteenth Amendments to the United States Constitution.

**SIU Has a Custom and Practice of Conducting Illegal Surveillance of Groups and Individuals based on Race, Social, and/or Political Views**

I.   **Illegal Surveillance of and Racial Profiling of "We The People"**

35.   Beginning on or about July 24, 2015, Sgt. Cole-Hatchard advised Haverstraw, New York Police Chief Miller via email that the SIU had learned that "WE THE PEOPLE," an African American community group located in Rockland County with no criminal records or history of violence, planned to sponsor a play entitled "A CLEAN SHOOT?" stating in pertinent part:

> I came across an on line ad for an event scheduled to take place in your jurisdiction and thought you might want to be aware. A group called "WE THE PEOPLE" is presenting a play entitled "A CLEAN SHOOT?" on Thursday, September 3, 2015, at 2000 hours at the SHADES REPERTORY THEATER at 64 Main Street, Haverstraw. The advertisement shows a photo of a police car with a white subject Pointing a handgun out of the vehicle window. I have attached a copy of the ad for your reference. We do not have any intelligence developed relating this matter at this point, as this is for informational purposes only. *However, if you would like a tactical intelligence workup on the hosting group or any of the people mentioned in the ad feel free to let me know and we will be happy to do so right away.* **(Emphasis Added)**

36.   On August 4, 2015, the Haverstraw Police Department acknowledged via email receipt of the play flyer and requested that the Clarkstown SIU "provide anything you can obtain on this group and its participants."

37.   By email of the same day Sgt. Cole-Hatchard advised "... I will have one of he (sic) analysts do a workup on the group, location and players. Give us a couple of days and i (sic) will get whatever we find to you."

9

38. The SIU thereafter generated an August 7, 2015 "Intelligence Report" on "WE THE PEOPLE" and the 14 individuals (Plaintiffs) involved with the planned production of the play. See SIU Intelligence Report, annexed hereto as **Exhibit G**

39. The "Intelligence Report" stated that the SIU, as part of the ILPPC, was "a 28 CFR Part 23 compliant agency." That representation was false in that the Intelligence Report and SIU violated 28CFR Part 23, *et. seq.*

40. Although there was absolutely no evidence that any of the members of "WE THE PEOPLE" were engaged in, or reasonably suspected to engage in, criminal activity, violence, or otherwise posed a public safety threat, the Report reflects that SIU used electronic surveillance assets to search each individual's social media profiles and postings. In addition, each individual was "run through" the Clarkstown RMS criminal database.

41. The "Intelligence Report" Summary states, "Although individuals involved in the organization have strong opinions, there is no cause to believe this event is going to become violent."

42. On or about August 31, 2016 WE THE PEOPLE were contacted by NBC on Face Book instant messenger and notified about the existence of this "Intelligence Report" and the illegal surveillance that preceded the report.

43. On or about September 22, 2016 a news story covered by Investigative Reporter Sarah Wallace was aired/published by NBC. Defendant Chief Sullivan was asked the following question and answered as follows:

> Ms. Wallace: *"So no one was run through the criminal data base?"*
> Chief Sullivan: *"No, no to do criminal histories things of that nature you need a reason to do it, you have to document it, this was all public information."*

44. The SIU racial profiled and illegal surveilled "WE THE PEOPLE" without any justifiable basis because "WE THE PEOPLE" exercised its First Amendment right to express their views through sponsoring a play.

45. The racial profiling of the members of "WE THE PEOPLE" violated 28 CFR Part 23 (a) and (b) as well as the First, Fourth and Fourteenth Amendments to the United States Constitution.

## II. Illegal Surveillance of Town Residents That Support Police Reform

46. Current Town of Clarkstown Supervisor George Hoehmann ran in the November 2015 election on a platform that included the review and appropriate fiscal reform of all aspects of Town government, including the Police Department's $50 million annual budget, which represents one-third of the Town's $150 million annual budget.

47. Upon information and belief, following Supervisor Hoehmann's election victory the SIU at the direction of Sullivan and Cole-Hatchard, the SIU began and continue conducting illegal surveillance of Supervisor Hoehmann's social media to gather personal information to use to oppose Mr. Hoehmann's proposed review and reform of the police department.

48. Commencing on or about December 1, 2015, with the knowledge and consent of Chief Sullivan and Sgt. Cole-Hatchard, the SIU began using electronic surveillance to identify individuals with social media posts who supported Supervisor Hoehmann's fiscal reforms, including that of the police department.

49. By email dated December 11, 2015, SIU analyst, K. Donohue gathered and forwarded to Sgt. Cole-Hatchard the social media posts of approximately 20 Clarkstown residents who favor fiscal reform of the police department. Once again, none of the individuals were suspected of any criminal activity. Their only crime was

11

the political views posted on social media were averse to the financial interests of Chief Sullivan, Sgt. Cole-Hatchard, and the Clarkstown Police Department.

### III. Rockland County Sheriff Lou Falco

50. In November 2015, Rockland County Sheriff Lou Falco ran for re-election. Chief Sullivan and Sgt.Cole-Hatchard opposed his re-election, perceiving him as a political rival and threat for available public police funding.

51. By email dated September 9, 2015, Sgt. Cole-Hatchard forwarded to Chief Sullivan a four-page political attack "REFRESHER" strategy against County Sheriff Falco entitled "LOU FALCO IS THE WORST THING TO HAPPEN TO PUBLIC SAFETY AND LAW ENFORCEMENT IN ROCKLAND COUNTY IN DECADES." The document was an outline of a political campaign against Falco based upon the perceived threat the County Sheriff posed to the Clarkstown Police Department. It was prepared by Sgt. Cole-Hatchard while on duty at the SIU and transmitted via the official Clarkstown.org email to Chief Sullivan while he was on duty as Police Chief.

52. Like the surveillance report on WE THE PEOPLE, the email cover "Notice" accompanying the Falco "Refresher" stated that SIU was a "28 CFR Part 23 compliant agency". Sheriff Falco did not engage in any criminal conduct, nor did Chief Sullivan or Sgt. Cole-Hatchard have a reasonable suspicion he did so. The political attack against Sheriff Falco, is a flagrant violation of 28 CFR Part 23.20 (a) and (b).

### IV. Clarkstown Town Judge Howard Gerber

53. Chief Sullivan and Sgt. Cole –Hatchard perceived Clarkstown Town Judge Howard Gerber as a political enemy of the police department. Unhappy with Judge Gerber, Chief Sullivan unsuccessfully filed a complaint in early 2015 with the New York State Commission on Judicial Conduct. Gerber was exonerated.

54. Judge Gerber ran for re-election in November 2015. In anticipation of his re-election bid Chief Sullivan and Sgt. Cole Hatchard, both while on duty prepared a potential election strategy to defeat Judge Gerber. By email dated October 29, 2015, Sullivan outlined his plan to Sgt. Cole-Hatchard:

> I have been monitoring the news and so far, there has been no stories regarding this. I don't think we should bring attention to it unless the Judge does. If he does I think we should release the case file, including the interview to the press. Although we don't normally do this I think we can in the interest of public disclosure regarding an elected official that directly impacts upon his conduct and duty of that elected official. I also spoke with the District Attorney who stated that he would have no problem with releasing it. I am also including a draft of a letter I will be sending to the Commission on Judicial Misconduct. Please review and let me know what you think.

55. The same day Sgt. Cole-Hatchard, while on duty with the SIU, responded: "If [the District Attorney] is going to release it [Gerber's disciplinary case file], I would think it will wait until a point just before Election Day leaving [Gerber] no time for a response."

56. Judge Gerber was exonerated of any wrongdoing by the State of New York. He did not engage in criminal conduct. He did not represent a public safety threat. Yet, while on duty Chief Sullivan and Sgt. Cole-Hatchard engaged in a scheme to politically attack and potentially defeat Judge Gerber for political purposes illegally using police department and SIU resources in violation of 28 CFR Part 23.20 (a) and (b) and the United States Constitution.

57. As a result of the foregoing, SIU, have and will continue unless enjoined to engage in unlawful racial, political, social profiling and surveillance of citizens in violation of the Omnibus Crimes Act, 28 CFR 23, *et seq.* and the First, Fourth and Fourteenth Amendments to the United States Constitution.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**VIOLATIONS OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**

58. Platintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

59. At the time of the conduct complained of herein, Chief of Police Michael Sullivan, Sergeant Stephen Cole-Hatchard, and John & Jane Doe Members of SIU were all employees of the Defendant Town of Clarkstown and acted under color of law.

60. The Defendants as co-conspirators through their illegal surveillance and racial profiling had a chilling effect on Plaintiffs' right to free speech and association. Black Lives Matter have not held any events, protests or rallies since being confronting with snipers on nearby rooftops during a July 2016 rally and learning of the illegal surveillance. As a direct and proximate result of the acts of the Defendants individually and as co-conspirators, the Plaintiffs have been deprived of their rights under the First Amendment to the United States Constitution.

### SECOND CAUSE OF ACTION

**VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

61. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

62. At the time of the conduct complained of herein, Chief of Police Michael Sullivan, Sergeant Stephen Cole-Hatchard, and John & Jane Doe Members of SIU were all employees of the Defendant Town of Clarkstown and acted under color of law.

63. The Defendants as co-conspirators through their illegal surveillance of Plaintiffs, treated Plaintiffs differently because they are African American. As a direct and proximate result of the acts of the Defendants individually and as co-conspirators,

the Plaintiffs were deprived of their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION

### MONELL CLAIMS

64. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

65. At the time of the conduct complained of herein, Chief of Police Michael Sullivan, Sergeant Stephen Cole-Hatchard, and John & Jane Doe Members of SIU were all employees of the Defendant Town of Clarkstown and acted under color of law.

66. *Monell v. New York City Department of Social Services* established the principle that the government is liable for actions taken pursuant to official municipal policy that cause plaintiffs to be injured.

67. An official policy can be created by regulation, ordinance, or handbook. More commonly under § 1983 suits "Municipal Policy" stems from customs and practices of the municipality that are evinced through repeated incidents of similar conduct. "Municipal Policy" can also stem from a decision made by a policy-making authority or the approval of a subordinate's decision, by a policy-making authority because their decision is final.

68. It is undisputed based on the admissions contained in Defendant Town's Answer to Co-Defendant Chief Sullivan's lawsuit that he was the policy maker for the police department.

69. It is undisputed based on the admissions contained in Defendant Town's Answer to Co-Defendant Chief Sullivan's lawsuit that there were repeated incidents of illegal surveillance of groups and individuals based on race, social, and/or political views.

70. Accordingly, under the dictates of Monell and its progeny the Town of Clarkstown is liable for the deprivation of the rights afforded to Plaintiffs BLACK LIVES MATTER as a group and individually under the First, and Fourteenth Amendments to the United States Constitution.

## PUNITIVE DAMAGES

71. Plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

72. The acts of the individual Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiff's without regard for their rights secured as American citizens and were based on a lack of concern and ill-will towards the Plaintiffs because they were African American and voiced an opinion contrary to their own. Such acts therefore warrant an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment and relief against Defendants as follows:

a. Enjoin further violations of Plaintiffs' constitutional rights, including but not limited to an injunction that requires the Defendant to refrain from targeting Plaintiffs for surveillance on the basis of race;

b. Order Defendant Town of Clarkstown to adopt and follow the Handschu Guidelines;

c. Award Compensatory Damages in an amount to be determined at trial;

d. Award Punitive Damages in an amount to be determined at trial;

e. Award costs and expenses of this action including attorneys' fees to Plaintiffs pursuant to 43 U.S.C. § 1988;

f. Any such other and further relief as this Court may deem appropriate.

## A JURY TRIAL IS DEMANDED

DATED: White Plains, New York
August 30, 2017

        **LAW OFFICE OF WILLIAM O. WAGSTAFF III P.C.**

        By: _/s/ William O. Wagstaff III_
        William O. Wagstaff III, Esq.
        William@Wagstaff.Legal
        75 South Broadway Suite 400
        White Plains, New York 10601
        Tel: 914-226-3300
        Fax: 914-226-3301

        *Counsel for Plaintiffs*