UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BLACK LIVES MATTER, JERLYNE CALIXTE
individually and as a member of BLACK LIVES
MATTER, VANESSA GREEN individually and as
a member of BLACK LIVES MATTER,
DOMINIQUE MCGREGOR individually and as a
member of BLACK LIVES MATTER, DR.
WELDON MCWILLIAMS IV individually and as
a member of BLACK LIVES MATTER,
EVERETT NEWTON individually and as a
member of BLACK LIVES MATTER,

                              Plaintiff,

        -against-

THE TOWN OF CLARKSTOWN, MICHAEL
SULLIVAN individually and in his official capacity as
CHIEF OF POLICE of THE TOWN OF
CLARKSTOWN, STEPHEN COLE-HATCHARD
individually and in his official capacity as a TOWN
OF CLARKSTOWN POLICE SERGEANT and
DIRECTOR OF THE STRATEGIC INTELLIGENCE
UNIT, JOHN AND JANE DOE individually and in
their official capacities as MEMBERS OF THE
STRATEGIC INTELLIGENCE UNIT for THE
TOWN OF CLARKSTOWN POLICE,

                              Defendants.

No. 17-cv-6592 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

        Plaintiffs Black Lives Matter, Jerlyne Calixte, Vanessa Green, Dominique McGregor,

Weldon McWilliams IV, and Everett Newton bring this action against Defendants Town of

Clarkstown, Michael Sullivan individually and in his official capacity, and Stephen Cole-Hatchard

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/14/2018

individually and in his official capacity in the Amended Complaint ("Amended Complaint," ECF No. 28).   Plaintiffs claim that they are entitled to relief pursuant to 42 U.S.C. § 1983 for Defendants' violations of the First and the Fourteenth Amendments.[1]   Defendants each move to dismiss Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6) (ECF Nos. 40, 43, & 48).   The Court will address the motions together in this Opinion.

For the following reasons, Defendants' motions are GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are derived from the Amended Complaint or matters of which the Court may take judicial notice and are accepted as true for the purposes of this motion.

On or about April 17, 2013, County of Rockland and Defendant Clarkstown entered into an inter-municipal agreement to form the Rockland County Intelligence Led Policing and Prosecution Center ("SIU") to "monitor, collect and share data regarding criminal activity as authorized by the Omnibus Crime Act, 28 CFR Part 23 et seq. and the Constitutions of the United States and the State of New York."[2] (Compl. ¶ 18.)  Starting as early as January 2015, with the knowledge and consent of Defendant Sullivan as the Chief of Police and Defendant Cole-Hatchard as the SIU director, the SIU "engaged in unlawful surveillance of African American groups, the Rockland County Sheriff, a Clarkstown Town Judge, and citizens of the

---

[1] Paragraph 26 of Plaintiffs' Amended Complaint also alleges that Defendants violated the Fourth Amendment, but Plaintiffs do not raise Fourth Amendment claims anywhere else in their Amended Complaint. They also do not address the Fourth Amendment in their opposition.  "At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. 2014).  Accordingly, the Court will not address any Fourth Amendment claims, assuming Plaintiffs intended to assert such claims, because they are abandoned.

[2] The Omnibus Crime Act requires that there be reasonable suspicion that individuals or groups are involved in criminal conduct before engaging in surveillance and collection of electronic data concerning political, religious, or social views of those individuals or groups. The Act also requires that the information that is the subject of the surveillance to be relevant to the suspected criminal conduct. 28 C.F.R. § 23.20.

County of Rockland, solely based upon these individuals' race, social and/or political positions."
(*Id.* ¶¶ 21, 23, & 26.)  One of the groups subjected to surveillance was the Rockland County branch of Black Lives Matter.

In connection with this surveillance, as early as January 1, 2015, SIU and the Rockland County District Attorney's Office issued monthly reports on the number of electronic investigations established, the groups targeted for surveillance, and the number of alerts received and reviewed. (*Id.* ¶¶ 27, 29.)  According to the November 2015 Report, the "Black Lives Matter Movement" was one of the groups subjected to electronic surveillance which included, but was not limited to, searching public social media information and categories such as gangs, violence, terrorism, heroine initiative, and police riots.[3]  (*Id.* ¶ 30.) The November 2015 Report also indicated that SIU conducted electronic surveillance on two Black Lives Matter Movement members and found no criminal misconduct or threat of criminal conduct from Black Lives Matter or those two individuals.  (*Id.* ¶ 31.)  The report does not "reflect any justifiable basis to conduct such surveillance as mandated by 28 CFR Part 23.20(a) and (b)." (*Id.*)  The SIU's December 2015 report is similar to the November 2015 report except that it indicates that SIU used electronic surveillance on six members of the Black Lives Matter Movement.  (*Id.* ¶ 33.) Once again, no criminal misconduct was found on the part of Plaintiff Black Lives Matter or any of the six members, and there was no legitimate basis for the surveillance.  (*Id.*)  Within forty-five minutes of receiving the December 2015 report, the Rockland County District Attorney's

---

[3] Although the November and December surveillance reports do not specify whether the surveillance was specifically of the Rockland County Black Lives Matter chapter, the Court is required to draw all reasonable inferences in Plaintiffs' favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, for the purposes of Defendants' motions to dismiss, the Court infers that the "Black Lives Matter" in the surveillance reports, which appear to be issued from the Rockland County District Attorney's office, is the Rockland County chapter of Black Lives Matter.

Office emailed Defendant Cole-Hatchard, "I mentioned before, you really should not have Black Lives Matter listed as a target for surveillance." (*Id.* ¶ 35.)

On or about July 11, 2016, all of the named Plaintiffs participated in a peaceful rally at which Plaintiff McWilliams spoke. (*Id.* ¶ 36.) During this rally, all Plaintiffs observed snipers from the Clarkstown police department on a nearby roof. (*Id.* ¶¶ 36 – 38.) Plaintiff Green saw a red sniper rifle dot appear on Plaintiff McWilliams during the speech. (*Id.* ¶ 36.) This incident "resulted in the chilling of [Plaintiffs'] first amendment exercise of free speech." (*Id.* ¶ 38.)

Following this incident, at least one Clarkstown employee identified the Clarkstown police department's actions as illegal and stated that Plaintiffs were the victims of this illegal conduct. Town of Clarkstown Supervisor George Hoehmann wrote an August 26, 2016 letter to the United States Attorney's Office "[w]ith the unanimous support of the [Clarkstown] Board . . . to report evidence of what appears to be illegal profiling by the Clarkstown Police Department." (*Id.* ¶ 39.) Mr. Hoehmann's letter goes on: "The foregoing evidence . . . reflects that despite being admonished to the contrary, Sgt. Cole-Hatchard and the Clarkstown SIU were conducting illegal electronic surveillance on members of the Black Lives Matter Movement without any justifiable legal basis in violation of Federal Law." (*Id.*)

According to Plaintiffs, SIU's illegal surveillance of Plaintiffs was part of Defendant Clarkstown's custom and practice of conducting illegal surveillance of groups and individuals based on race and political views in order to chill First Amendment speech.

Around July 2015, SIU learned of the existence of "WE THE PEOPLE," an African American community group in Rockland County with no criminal records or history of violence, and that the group planned to sponsor a play called "A CLEAN SHOOT?" (*Id.* ¶ 41.) Advertisements for the play featured an image of a police car with a "white subject pointing a

4

handgun out of the vehicle window." (*Id.*) SIU conducted an electronic investigation on WE THE PEOPLE in early August 2015 and generated an intelligence report on the group and its members even though there was no evidence that any of the members of WE THE PEOPLE were engaged in or were reasonably suspected to engage in criminal activity. (*Id.* 44 – 46.) WE THE PEOPLE learned of the intelligence report on August 31, 2016, when it was contacted by NBC on Facebook. (*Id.* ¶ 49.) "SIU racial [sic] profiled and illegal [sic] surveilled 'WE THE PEOPLE' . . . because 'WE THE PEOPLE' exercised its First Amendment right to express their views through sponsoring the play." (*Id.* ¶ 50.)

The Clarkstown Supervisor also fell victim to Defendant Clarkstown's custom of illegal surveillance. Mr. Hoehmann, Clarkstown Supervisor, ran in the November 2015 election on a platform for fiscal reform which would presumably have impacted the Clarkstown police budget. (*Id.* ¶ 52.) After Mr. Hoehmann won the election, SIU began conducting surveillance on his social media to gather information to use to oppose Mr. Hoehmann's proposed review and reform of the police department and to identify those who supported Mr. Hoehmann's reforms. (Id. ¶¶ 53 – 54.) As part of this surveillance, the SIU gathered social media posts from approximately twenty Clarkstown residents who were in favor of fiscal reform of the police department, and none of these individuals were suspected of criminal activity. (*Id.* ¶ 55.) In its answer to Defendant Sullivan's suit against Defendant Clarkstown, a separate case from this action, Defendant Clarkstown admitted that SIU surveillance and assets were illegally used to attack political enemies, including Mr. Hoehmann. (*Id.* Ex. C.)

In November 2015, Rockland County Sheriff Lou Falco, who Defendants Sullivan and Cole-Hatchard opposed, ran for reelection. (*Id.* ¶ 56.) On September 9, 2015, Defendant Cole-Hatchard forwarded to Defendant Sullivan a political attack strategy against Mr. Falco. (*Id.* ¶

57.)  Defendant Cole-Hatchard prepared the political attack strategy while he was on duty at the SIU. (*Id.*)

Defendant Clarkstown's custom of illegal surveillance was also used to target a judge. Clarkstown Judge Howard Gerber ran for reelection in November 2015 apparently while under investigation for potential judicial misconduct. (*Id.* ¶¶ 59 – 60.)  While working for Defendant Clarkstown, Defendant Sullivan and the SIU prepared a strategy to defeat Judge Gerber. (*Id.* ¶¶ 60 – 61.)  Judge Gerber was exonerated of any wrongdoing and did not represent a public safety threat, but Defendants, using SIU resources, persisted in pursuing an attack campaign against Judge Gerber for political purposes. (*Id.* ¶ 63.)

Based on these allegations, Plaintiffs claim that they are entitled to relief under § 1983 because Defendants violated Plaintiffs' First Amendment freedoms of speech and assembly and their Fourteenth Amendment due process rights.  For relief, Plaintiffs request that the Court issue an injunction to prohibit Defendants from targeting Plaintiffs for surveillance by race; require Defendant Clarkstown to adopt and follow the Handschu Guidelines[4]; award compensatory and punitive damages; and award costs and expenses, including attorneys' fees.

## STANDARD ON A MOTION TO DISMISS

When a court lacks the statutory or constitutional power to adjudicate a case, it should dismiss the case for lack of subject matter jurisdiction under Rule 12(b)(1).[5]  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l*

---

[4] The Handschu Guidelines govern the NYPD investigation of political activities.  *See Handschu v. Special Serv. Div.*, 605 F. Supp. 1384 (S.D.N.Y. 1985) (containing full text of the original Handschu Guidelines).  After the terrorist attacks on September 11, 2001, the Handschu Guidelines were modified to include the FBI Guidelines for investigations. *Handschu v. Police Dep't of the City of N.Y.*, 219 F. Supp. 3d 388, 390 (S.D.N.Y. 2016).
[5] Lack of standing may be grounds for dismissal under Rule 12(b)(1). *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016).

*Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level' " to move beyond a motion to dismiss. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor. *Iqbal*, 556 U.S. at 678. However, the court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial

notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

## DISCUSSION

### I.     Standing

Before turning to Plaintiffs' claims, the Court must first determine whether Plaintiffs have standing. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016) (noting that courts should consider jurisdictional issues such as standing first in a motion to dismiss analysis). Article III requires federal courts to adjudicate actual cases and controversies. U.S. Const. art. III, § 2, cl. 1.  To ensure that there is a case or controversy, the Supreme Court has held that parties before federal courts must have standing to bring their claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A plaintiff has standing if she has suffered "(1) an injury that is (2) 'fairly traceable to a defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.' " *Id.* 560 – 61 (quoting *Allen v. Wright,* 468 U.S. 737, 751 (1984)).  For the purposes of standing, an injury must be an injury in fact, meaning "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* at 560 (citations and quotation marks omitted).

Where, as here, standing is challenged at the pleadings stage, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *United States v. Vazquez,* 145 F.3d 74, 81 (2d Cir. 1998) (internal quotation marks omitted).  "To survive the motion to dismiss, the pleadings must only 'allege facts that affirmatively and plausibly suggest that [Plaintiffs have] standing to sue.' " *Boelter v. Hearst*

*Commc'n, Inc.*, 192 F. Supp. 3d 427, 437 (S.D.N.Y. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T.*, 671 F.3d 140, 145 (2d Cir. 2011)).  A plaintiff's "standing allegations need not be crafted with precise detail."  *Baur v. Veneman,* 352 F.3d 625, 631 (2d Cir. 2003).

## A.    Standing for Plaintiff Black Lives Matter

Defendants argue that Plaintiff Black Lives Matter as an organization lacks standing because it fails to allege sufficient facts to indicate that it is suing on its own behalf.  (Def. Sullivan's Mem. of Law in Supp. of Mot. to Dismiss ("Def. Sullivan's Mot.") p. 18, ECF No. 40); (Def. Cole-Hatchard's Mem. of Law in Supp. of Mot. to Dismiss ("Def. Cole-Hatchard's Mot.") p. 3, ECF No. 48); (Def. Clarkstown's Mem. of Law in Supp. of Mot. to Dismiss ("Def. Clarkstown's Mot.") pp. 13 – 14, ECF No. 43.)  Organizations do not have standing to assert the rights of their members in § 1983 cases because "the rights [§ 1983] secures to [are] personal to those purportedly injured."  *League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir.1984); *see Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir 2011).  However, organizations may bring § 1983 claims on their own behalf so long as they can satisfy the three requirements for Article III standing. *Nnebe*, 644 F.3d at 156.  To have standing, an organization must establish that there is (1) an imminent injury "to itself as an organization (rather than to its members) that is 'distinct and palpable' "; (2) the injury is fairly traceable to the defendant's actions; and (3) the court can redress the injury.  *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F. 3d 104, 109 (2d Cir. 2017).  In *Centro de la Comunidad Hispana de Locust Valley*, the court held that the plaintiff, an organization that worked to advance the rights of laborers, had standing to bring a § 1983 First Amendment action. *Id*. at 110 – 11.  The organization sufficiently alleged that enforcement of a law regulating road-

side employment solicitation caused it imminent concrete injuries because enforcement adversely impacted the organization's ability to organize laborers. *Id.*

Unlike the organization in *Centro de la Comunidad Hispana de Locust Valley*, Plaintiffs do not allege an injury specifically to Plaintiff Black Lives Matter as an organization in their Amended Complaint. Plaintiffs do state an injury specific to Plaintiff Black Lives Matter in their opposition to Defendants' motions to dismiss. (Pls.' Opp'n to Defs' Mots.to Dismiss ("Pls. Opp'n") pp. 9 – 10, ECF No. 52.) According to Plaintiffs' opposition, the surveillance made it difficult for Black Lives Matter to attract new members. (*Id.*) However, "[n]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss." *Berenstein v. City of New York,* No. 06-CV-895, 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007); *see e.g.*, *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015); *Zick v. Waterfront Com'n of N.Y. Harbor*, No. 11-CV-5093(CM), 2012 WL 4785703, at *3 (S.D.N.Y. Oct. 4, 2012); *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11-CV-7877(PAC), 2012 WL 6186471, at *1 (S.D.N.Y. Dec. 12, 2012). Thus, the Court cannot consider the new allegations of specific injury to Plaintiff Black Lives Matter offered in Plaintiffs' opposition. Based on the allegations asserted in the Amended Complaint, Plaintiff Black Lives Matter lacks standing.

## B.    Standing for Individual Plaintiffs

Plaintiffs state a facially plausible claim that they were personally injured by Defendants' actions. Defendants assert that individual Plaintiffs lack standing because, similar to the plaintiffs in *Laird v. Tatum*, Plaintiffs do not allege that they personally were the subjects of surveillance. (Def. Sullivan's Mot. p. 16); (Def. Clarkstown's Mot. pp. 8 – 11.) Defendants miss, however, that Black Lives Matter only had six members at the time of the relevant conduct

and the Amended Complaint alleges that the five individual Plaintiffs were five of those six members. (Compl. ¶¶ 8 – 13.) The Amended Complaint also alleges that Defendants conducted illegal surveillance on the six members of Black Lives Matter. (*Id.* ¶ 33.) The Court is required to draw reasonable inferences in Plaintiffs' favor, and it is reasonable to infer that the individual Plaintiffs, as five of the six members of Black Lives Matter, were the subjects of this surveillance. *See Iqbal*, 556 U.S. at 678. In addition to the surveillance, the Amended Complaint also sufficiently alleges that all of the individual Plaintiffs participated in the July rally where "[a]ll named Plaintiffs were alerted to and saw the sniper." (Compl. ¶¶ 36 – 38.) The personal injury alleged exceeds that of the plaintiffs in *Laird*, who merely "disagree[d] with the judgments made by the Executive Branch with respect to the type and amount of information the Army needs." *See Laird v. Tatum*, 408 U.S. 1, 13 (1972). Accordingly, Plaintiffs' Amended Complaint plausibly alleges that Plaintiffs were personally injured by Defendants' actions.

Next, Defendants argue that Plaintiffs lack standing because they do not sufficiently allege that Defendants "chilled" their First Amendment Rights and therefore do not allege that they suffered any actual injury.[6] The Court disagrees. Plaintiffs' Amended Complaint plausibly establishes each prong required for standing: (1) actual and concrete injury; (2) that is fairly traceable to Defendants' conduct; and (3) that is likely to be redressed by the requested relief.

Plaintiffs allege a concrete and actual injury: the chilling of their First Amendment freedoms of speech and association caused by Defendants' surveillance and Defendants' activity at the July rally which included Defendants allegedly aiming a red laser from a sniper rifle at Plaintiff McWilliams. (*See* Compl. ¶ 36.) "A plaintiff must allege something more than an

---

[6] Specifically, Defendant Sullivan argues that Plaintiffs do not have standing to bring a free speech claim. (Def. Sullivan's Mot. p. 11) Defendants Cole-Hatchard and Clarkstown argue that Plaintiffs completely lack standing. (Def. Cole-Hatchard's Mot. p. 3) (Def. Clarkstown's Mot. pp. 8 – 14.) The Court will analyze whether Plaintiffs have standing to bring the case as a whole.

abstract, subjective fear that his rights are chilled in order to establish a case or controversy[,] . . . [b]ut a real and imminent fear of such chilling is enough." *Nat'l Org. for Marriage, Inc. v. Walsh,* 714 F.3d 682, 689 (2d Cir. 2013) (citation omitted); *see also Laird v. Tatum,* 408 U.S. 1, 13 (1972); *Kounitz v. Slaatten,* 901 F. Supp. 650, 654 (S.D.N.Y.) (holding that the plaintiff failed to allege an injury in fact because he asserted "in the most general fashion" that he had been "chilled in the exercise of his First Amendment rights").  Plaintiffs do not allege merely a subjective fear, but a present harm.  "The essence of a claim of chill . . . is an assertion that one has elected to refrain from speaking, rather than risk prosecution," *Nitke v. Ashcroft,* 253 F. Supp. 2d 587, 597 (S.D.N.Y. 2003), and that is exactly what Plaintiffs allege in their Amended Complaint.  The sight of what is purportedly the red dot of a sniper rifle on a member of one's organization is undeniably chilling on both free speech and free association. When confronted with this threat of violence from the government at a peaceful Black Lives Matter rally, on top of the illegal surveillance targeted against the group and its members, any reasonable person would think twice before continuing to participate in Black Lives Matter. "Black Lives Matter have not held any events, protests or rallies since being confronted with snipers on nearby rooftops during a rally and learning of the illegal surveillance."  (Compl. ¶ 66.) At the motion to dismiss phase, the Court must accept Plaintiffs' allegations as true.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The fact that, as the Amended Complaint alleges, Plaintiffs felt so intimidated by Defendants' activities that they did not have any events after the July rally is sufficient to plausibly establish actual chill and an injury for the purposes of standing.

The second and third elements of standing are not disputed by Defendants, beyond that the Defendants disagree Plaintiffs suffered actual injury.  Based on the face of Plaintiffs' Amended Complaint, the chill on Plaintiffs' First Amendment rights is fairly traceable to

Defendants' actions and their injury would be redressed by a favorable verdict enjoining Defendants from targeting Plaintiffs for surveillance based on their race.  Accordingly, the individual Plaintiffs have standing to proceed.

## II.    Monell Claims

A municipality may be sued under 42 U.S.C § 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Serv's.*, 436 U.S. 658, 694 (1978).  Therefore, any § 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004).  Here, Plaintiffs assert First and Fourteenth Amendments claims against Defendant Clarkstown based on Defendant Clarkstown's custom, policy, and practice "of conducting illegal surveillance of groups and individuals based on race, social, and/or political views to chill First Amendment speech." (Compl. ¶ 41.)  Plaintiffs' Amended Complaint also includes several detailed examples of Defendants conducting surveillance on other individuals and groups based on race or for political reasons.  Based on the face of Plaintiffs' Amended Complaint, the Court determines that Plaintiffs have asserted a facially plausible *Monell* claim.

## III.    First Amendment

Plaintiffs' Amended Complaint in effect alleges that Defendants retaliated against them in violation of their First Amendment freedoms of speech and association for their participation in Black Lives Matter.

A First Amendment retaliation claim requires a showing that "(1) [plaintiff] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."

*Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). "Speech on matters of public concern" "falls within the core of First Amendment protection." *Engquist v Oregon Dep't of Agr.*, 553 U.S. 591, 600 (2008); *see Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014). Matters of public concern include subjects that are of general interest and concern to the public. *City of San Diego v. Roe*, 543 U.S. 525 – 26 (2004).

Plaintiffs participated in Black Lives Matter to "call for justice" and racial equality and based upon their belief "that the killing of unarmed people of color by law enforcement must stop." (Compl. ¶ 8.) This pursuit falls squarely within matters of public concern, particularly at a time when awareness of violence between law enforcement and unarmed people of color is rapidly increasing. Free speech and free association are "at the foundation of a free society." *State Emp. Bargaining Agent Coalition v. Rowland*, 718 F.3d 126, 132 (2d Cir. 2013) (quoting *Shelton v. Tucker*, 364 U.S. 479, 485 – 86 (1960)). The First Amendment protects this foundation, and it is an integral responsibility of the Court to ensure that the First Amendment is upheld and that free speech and association remain protected. Considering this solemn responsibility and applying the appropriate law, the Court finds that Plaintiffs plausibly claim Defendants violated their First Amendment rights.

First, there is no doubt that Plaintiffs have a right to engage in political speech on social media. *See Silberberg v. Bd. of Elections of N.Y.*, 272 F. Supp. 3d 454, 459 (S.D.N.Y. 2017) ("Posing a photograph of one's marked ballot to social media is indisputably a potent form of political speech, presumptively entitled to protection under the First Amendment."); *see also Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 564 – 65 (S.D.N.Y. 2018) (holding that the plaintiffs had a First Amendment right to engage in political speech on social media). Similarly, Plaintiffs unquestionably have the right to join and

14

participate in political and advocacy organizations like Black Lives Matter.  *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989) (holding that "political organizations enjoy freedom of association protected by the First and Fourteenth Amendments"); *see generally Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000).

Second, Plaintiffs have stated a facially plausible claim that Defendants' actions were motivated by Plaintiffs' protected activity.  Based on the face of Plaintiffs' Amended Complaint, Plaintiffs were subjected to electronic surveillance and to snipers at the July rally because of their participation in Black Lives Matter.  (Compl. ¶¶ 2 – 3, 31, & 33.)  Courts have held that similar allegations were sufficient to plausibly allege that the defendant's actions were motivated or substantially caused by the plaintiff's exercise of her First Amendment rights.  *Marom v. City of New York*, No, 15-CV2017(PKC), 2016 WL 916424, at *11 (S.D.N.Y. Mar. 7, 2016) (holding that the plaintiffs stated a plausible First Amendment retaliation claim by alleging that they were arrested due to their participation on Occupy Wall Street); *Davis v. City of New York*, No. 00-CV-4309(SAS), 2000 WL 1877045, at *6 (S.D.N.Y. Dec. 27, 2000) (denying the defendants' motion to dismiss because the plaintiff plausibly alleged that the defendants retaliated against him for his exercise of his First Amendment right to participate in the political process).

Finally, as discussed in the Court's standing analysis, Plaintiffs' Amended Complaint plausibly alleges that Defendants' actions chilled their First Amendment rights.  *See supra* Part I.B.  Accordingly, Plaintiffs plead sufficient facts to support a plausible First Amendment claim.

IV.   **Fourteenth Amendment**

Plaintiffs claim that Defendants "encroach[ed] upon the liberties of the Plaintiffs" and deprived them of their rights under the Due Process Clause of the Fourteenth Amendment. (Compl. ¶¶ 40, 69.)  However, Plaintiffs' due process claim does not include facts distinct from

its First Amendment claim.  "[W]here another provision of the Constitution 'provides an explicit textual source of constitutional protection,' a court must assess a plaintiff's claims under that explicit provision and 'not the more generalized notion of substantive due process.' " *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (internal quotation marks omitted); *see Kia P. v. McIntyre*, 235 F.3d 749, 757 – 58 (2d Cir. 2000) (analyzing the plaintiff's detention claim under the Fourth Amendment rather than under Fourteenth Amendment due process).

The Due Process Clause cannot be used to attain an extra bite at the apple based on a claim that is specifically protected under another part of the Constitution.  *See Conn*, 526 U.S. at 293.  According to Plaintiffs' Amended Complaint, "Defendants encroached upon Plaintiffs' fundamental right to free speech in violation of the Due Process Clause." (Compl. ¶ 11.) Plaintiffs themselves indicate that their due process claim is a restatement of their First Amendment claim.  Moreover, Plaintiffs' Amended Complaint contains no other facts to suggest that Plaintiffs have any due process claim separate from their First Amendment claims.  Thus, based on the face of Plaintiffs' Amended Complaint, the First Amendment provides a source of protection for Plaintiffs' claims and the Court must assess those claims under the First Amendment.

## V.     Qualified Immunity

Defendants Sullivan and Cole-Hatchard each assert that they are entitled to qualified immunity.  "The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.' " *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  Consequently, "qualified immunity shields . . . officials from suit 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.' "

*Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "A right is clearly established when its contours . . . are sufficiently clear that, at the time of the challenged conduct, every reasonable official would have understood that what he is doing violates that right." *Crawford v. Cuomo*, No. 16-CV-3466, 2018 WL 542578, at *1 (2d Cir. Jan 25, 2018) (quotations and citations omitted).

Typically, the defense of qualified immunity will "rest on an evidentiary showing of what the defendant did and why." *Lamzot v. Phillips*, No. 04-CV-6719 (LAK), 2006 WL 686578, at *8 (S.D.N.Y. Mar. 16, 2006) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003)).  However, at the motion to dismiss stage, defendants "must accept [a] more stringent standard." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).  The "facts supporting the defense [must] appear on the face of the complaint," *id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)), and the motion must only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

First, as discussed above, Plaintiffs plausibly claim that Defendants violated their First Amendment right to be free from retaliatory surveillance and intimidation at the July rally for their participation in Black Lives Matter.  Plaintiffs' Amended Complaint plausibly alleges that Defendants intentionally subjected them to surveillance based on their participation in Black Lives Matter in violation of their First Amendment rights.  Second, it was clearly established at the time of Defendants' actions in 2015 to 2016 that the government cannot retaliate against individuals for exercising First Amendment free speech and association rights. *See Rankin v. McPherson*, 483 U.S. 378, 383 – 84 (1987); *Jackler v. Byrne*, 658 F.3d 225, 243 (2d Cir. 2011) ("Thus, in January 2006 . . . it had been clearly established that the First Amendment protected a

citizen's decision both as to what to say and what not to say . . . ."); *Tomaino v. Williams*, 05-CV-3916(NGG)(WDW), 2007 WL 2743602, at *4 (S.D.N.Y. Sept. 18, 2007) (holding that the defendant did not have qualified immunity because the plaintiff plausibly alleged that the defendant violated the clearly established law that the government cannot retaliate against individuals for exercising free speech); *Wahad v. F.B.I.*, 813 F. Supp. 224, 229 – 30 (S.D.N.Y. 1993) (denying a defendant qualified immunity and holding that it was not reasonable for a defendant to believe that interfering with the speech and association of "groups such as the Black Panther Party" did not violate the Constitution).  No reasonable official would have thought engaging in surveillance and intimidation solely based on Plaintiffs' membership in Black Lives Matter was lawful.  The Omnibus Crime Act expressly prohibits the electronic surveillance of individuals or groups without reasonable suspicion that those individuals are involved in criminal conduct, 28 C.F.R. § 23.20, and the substantial weight of case law indicates that the government cannot deprive individuals of their freedoms of association or speech.  *See Rankin*, 483 U.S. at 383 – 84; *Jackler*, 658 F.3d at 243; *Tomaino*, 2007 WL 2743602, at *4; *Wahad*, 813 F. Supp. at 229 – 30.  There are no also no facts supporting qualified immunity on the face of the Amended Complaint.  Accordingly, Defendants Sullivan's and Cole-Hatchard's requests for qualified immunity is denied.

## VI.      Personal Involvement of Defendant Sullivan

Defendant Sullivan states that he was not personally involved in the alleged constitutional violations because he was not directly involved in SIU's data collection activities. (Def. Sullivan's Mot. pp. 23 – 24.)  To successfully allege § 1983 liability, a plaintiff must demonstrate "personal involvement" and cannot merely rely upon an individual's position of authority. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985); *Johnson v. Glick*, 481 F.2d 1028,

1034 (2d Cir. 1973)). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiffs allege that Defendant Sullivan consented to, and directed, the SIU's illegal actions toward Plaintiffs and that Defendant Sullivan received at least one of the surveillance reports on Plaintiffs. (Compl. ¶¶ 26, 32.) These allegations, without more, are insufficient to establish that Defendant Sullivan was personally involved with the SIU's illegal actions against Plaintiffs. *See Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 97-CV-7138(SJ), 2000 WL 307377, at *4 (E.D.N.Y. Mar. 26, 2000) (holding that conclusory statements that a defendant directed and was aware of constitutional violations are insufficient to establish personal involvement). Also, in their opposition to Defendants' motions to dismiss, Plaintiffs failed to address Defendant Sullivan's claim that he is not personally involved. "The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim." *Johnson v. City of New York*, 15-CV-8195, 2017 WL 2312924, at * 18 (S.D.N.Y. May 26, 2017) (holding that the plaintiff abandoned her claim because her opposition did not address the defendants' arguments, including their argument that they lacked personal involvement); *Barmore v. Aidala*, 419 F. Supp. 2d 193, 201 (N.D.N.Y. 2005) (dismissing the plaintiff's claims against the defendants

because the plaintiff did not address the defendants' personal involvement arguments in its opposition to the defendants' motion to dismiss).  Accordingly, the Court deems Plaintiffs' claims against Defendant Sullivan abandoned and that they must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiffs' Amended Complaint are GRANTED in part and DENIED in part.

Defendants' motions to dismiss Plaintiff Black Lives Matter for lack of standing are GRANTED. Defendants' motions to dismiss remaining Plaintiffs' First Amendment claims are DENIED, and Defendants' motions to dismiss remaining Plaintiffs' Fourteenth Amendment claims are GRANTED. Defendant Sullivan's motion to dismiss is GRANTED for lack of personal involvement. Plaintiffs are granted leave to re-plead in conformity with this Opinion.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 40, 43, and 48. Plaintiffs must file any amended pleading by December 14, 2018. If Plaintiffs fail to file an amended pleading by December 14, 2018, Plaintiffs' claims against Defendant Sullivan will be dismissed with prejudice and Plaintiffs Black Lives Matter and Defendant Sullivan will be removed from the case caption. Defendants are directed to file an answer to Plaintiffs' amended pleading, or the existing Amended Complaint if no amended pleading is filed by December 14, 2018, by January 14, 2019. The parties are directed to appear before this Court for an initial pre-trial conference on January 17, 2019 at 11:30 AM. The parties are further directed to confer, complete, and submit to the Court the attached case management plan before the initial pre-trial conference. This constitutes the Court's Opinion and Order.

Dated:    November 14, 2018                          SO ORDERED:
          White Plains, New York

                                        _____
                                              NELSON S. ROMÁN
                                          United States District Judge

UNITED STATES DISTRICT COURT                          Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                    Plaintiff(s),        **CIVIL CASE DISCOVERY PLAN**
                                                         **AND SCHEDULING ORDER**
              - against -


                                    Defendant(s).        _____ CV _____ (NSR)
-------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

    1.    All parties [consent] [do not consent] to conducting all further proceedings before
          a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
          The parties are free to withhold consent without adverse substantive consequences.
          (If all parties consent, the remaining paragraphs of this form need not be
          completed.)

    2.    This case [is] [is not] to be tried to a jury.

    3.    Joinder of additional parties must be accomplished by
          _____.

    4.    Amended pleadings may be filed until _____.

    5.    Interrogatories shall be served no later than _____, and responses
          thereto shall be served within thirty (30) days thereafter.  The provisions of Local
          Civil Rule 33.3 [shall] [shall not] apply to this case.

    6.    First request for production of documents, if any, shall be served no later than
          _____.

    7.    Non-expert depositions shall be completed by _____.

          a.    Unless counsel agree otherwise or the Court so orders, depositions shall not
                be held until all parties have responded to any first requests for production
                of documents.

          b.    Depositions shall proceed concurrently.

          c.    Whenever possible, unless counsel agree otherwise or the Court so orders,
                non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.  Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
      _____

                                            _____
                                            Nelson S. Román, U.S. District Judge